# In the United States Court of Federal Claims

|  |  |
|---|---|
| TERRY W. KWONG,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>THE UNITED STATES,<br><br>　　　　　Defendant. | No. 23-267<br>Filed November 25, 2025 |

Anthony V. Diosdi, Diosdi & Liu, LLP, San Francisco, CA, for plaintiff.
Tanner Stromsnes, Tax Division, United States Department of Justice, Washington, DC, for defendant.

**OPINION AND ORDER**
**Granting in part and denying in part the government's motion for summary judgment**

　　Terry Kwong filed suit in this court seeking a refund of penalties he paid for tax years 2007, 2010, 2011, 2015, and 2016. The government moves for summary judgment on all of Mr. Kwong's claims. The government argues that Mr. Kwong's claims for 2007, 2010, and 2011 are untimely. For 2015 and 2016, the government argues that the IRS correctly assessed penalties against Mr. Kwong for underpaying taxes throughout the year and that his challenge for 2016 is otherwise untimely. Mr. Kwong responds that his suit for 2007, 2010, and 2011 is timely because he is entitled to a statutory extension of the deadline under covid emergency relief legislation. Mr. Kwong also responds that the IRS should not have used his 2016 overpayment to cover outstanding penalties from 2007 and that he is therefore entitled to a refund of that overpayment.

　　Mr. Kwong's challenge for 2007, 2010, and 2011 is timely. The applicable emergency relief statute provides a postponement of deadlines that fall within the timing of the disaster, and that period did not expire until after Mr. Kwong filed suit in this court.

Mr. Kwong's challenges for 2015 and 2016, however, either are untimely or they otherwise fail to state a claim on which the court can grant relief. The IRS acted within its authority when it applied Mr. Kwong's overpayment for 2016 to cover his 2007 tax liabilities, and his request for a refund of that payment was untimely. Mr. Kwong mostly does not dispute that the IRS correctly assessed penalties for underpaying his 2015 and 2016 taxes, and where he does, his complaint fails to state a claim.

Thus, the court will grant in part and deny in part the government's motion for summary judgment.

## I. Background

Mr. Kwong was a co-owner of a business that owns and manages real estate. ECF No. 1 at 5 [¶30]; ECF No. 29-1 at 8:5-10:19. In 2005, Mr. Kwong bought his co-owners' shares and became the sole owner of the business. *Id.* at 10:13-19. As part of that transaction, Mr. Kwong refinanced the business's property. ECF No. 1 at 5 [¶31]; ECF No. 29-1 at 14:1-25. On the advice of his attorney and accountant, Mr. Kwong claimed a loss of $2,315,017 from the transaction on his 2005 tax return and carried that loss forward, including to the 2007, 2010, and 2011 tax years. ECF No. 1 at 5-6 [¶¶32-34]; ECF No. 29-1 at 18:14-16. The IRS audited Mr. Kwong's 2005 tax return and disallowed the loss in 2012, resulting in additional tax liabilities for the tax years to which he had applied the loss. ECF No. 1 at 6 [¶¶36-38]. At the same time, the IRS assessed delinquency penalties for those tax years. *Id.*; ECF No. 1-1 at 2 (2007 tax period; tax, interest, and penalty imposed in April 2012); *id.* at 7 (2010 tax period); *id.* at 10 (2011 tax period).

In 2015, Mr. Kwong had a tax liability of $426,756, but he withheld only $6,719 over the course of the tax year. ECF No. 29-1 at 82. The IRS assessed penalties for his failure to withhold enough money. *Id.* Later, Mr. Kwong negotiated an abatement of those penalties. *Id.* at 84. After the abatement, Mr. Kwong owed a total penalty of $4,563.22 for tax year 2015. *Id.* at 82-86.

In 2016, Mr. Kwong had tax liabilities of $88,164 but withheld only $6,684. ECF No. 29-1 at 89. Before filing his tax return for 2016, Mr. Kwong made an estimated payment of $400,000 to the IRS. *Id*. Mr. Kwong's 2016 tax return then requested that the amount that was an overpayment be applied forward to his 2017 taxes. *Id*. at 126. The IRS assessed $1,929.98 in penalties for tax year 2016 for Mr. Kwong's under-withholding. *Id.* at 89. Thus, an overpayment of $316,590.02 remained. Rather than applying that amount to Mr. Kwong's 2017 taxes, the IRS transferred it to cover Mr. Kwong's outstanding balance from tax year 2007. *Id*.

In 2020, Mr. Kwong filed requests for abatement, seeking refunds for the penalties he had paid for each of the 2007, 2010, 2011, 2015, and 2016 tax years. ECF No. 29-1 at 91-123. Later that year, in September and October 2020, the IRS issued notices of disallowance for Mr. Kwong's 2007, 2010, and 2011 claims. *Id.* at 64, 72, 78. As of when Mr. Kwong filed suit, the IRS had not acted on Mr. Kwong's 2015 or 2016 claims. *Id*. at 82-90. Mr. Kwong filed his complaint in 2023 in this court seeking refunds of the penalties for all five tax years. ECF No. 1 at 15-16. The government now moves for summary judgment, arguing that Mr. Kwong's 2007, 2010, and 2011 claims are untimely, and that the IRS appropriately assessed penalties for 2015 and 2016. ECF No. 29.

On August 6, 2025, the court held a hearing on the government's motion for summary judgment. ECF No. 34. After the hearing, the court ordered the parties to provide supplemental briefing on some of the issues raised at the hearing (ECF Nos. 32, 35), and the parties filed supplemental briefs (ECF Nos. 36, 37).

**II.      Discussion**

The court may grant summary judgment when the movant establishes that the record does not contain a "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rules of the Court of Federal Claims, Rule 56(a). When reviewing a motion for

3

summary judgment, "the judge's function is not … to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Genuine disputes over material facts preclude summary judgment. *Id.* at 248. A dispute is genuine when the evidence could lead a factfinder to reasonably resolve that issue "in favor of either party." *Id.* at 250. A fact is material if it might "affect the outcome of the suit under the governing law." *Id.* at 248. When a fact is ambiguous, the court draws all justifiable inferences and resolves any significant doubt in the non-movant's favor. *Id*. at 255.

"The party seeking summary judgment has the initial burden of establishing that there is no genuine dispute as to any material fact." *8x8, Inc. v. United States*, 854 F.3d 1376, 1380 (Fed. Cir. 2017). "[T]he burden on the moving party may be discharged by showing … that there is an absence of evidence to support the nonmoving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987) (cleaned up).

  A. **Mr. Kwong's claims for 2007, 2010, and 2011 are timely**

The tax code prescribes time limits for when a taxpayer may file a suit for a refund of taxes or penalties he has paid: "No suit or proceeding under section 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim … nor after the expiration of 2 years from the date of mailing … of the disallowance of the part of the claim to which the suit or proceeding relates." 26 U.S.C. § 6532.

    1. **The parties' arguments presented a moving target**

The IRS rejected Mr. Kwong's requests for abatement for 2007, 2010, and 2011 in September and October 2020, and Mr. Kwong filed this suit in February 2023, about two years and three months later. The briefing in this case was a journey. The government started by arguing that Mr. Kwong's 2007, 2010, and 2011 claims are jurisdictionally barred under 26 U.S.C. § 6532.

4

ECF No. 29 at 4-6. Mr. Kwong responded that the section 6532 statute of limitations is not jurisdictional, and even if it were, his claims were equitably or statutorily tolled under 26 U.S.C. § 7508A as part of the emergency relief enacted during the covid-19 pandemic. ECF No. 30 at 3-10. According to Mr. Kwong, section 7508A tolled the deadlines for him to file at the IRS from January 20, 2020, through July 10, 2023. *Id*. at 9-10. The government replied that Congress amended section 7508A in November 2021 to reduce the extension to only 60 days from the beginning of an emergency, and thus Mr. Kwong could not benefit from the extension. ECF No. 31 at 3-4.

After the court provided the parties with specific questions for the oral argument about postponement periods versus tolling and about retroactive application of the November 2021 statute, the government provided more detail at the oral argument. But it took the court's independently finding and citing the effective date of the 2021 statute for the government to concede that the November 2021 statute does not apply at all in this case, and only the 2019 version of section 7508A applies here. ECF No. 36 at 4.

The government then shifted gears in its supplemental brief and argued that, even under the older, 2019, version of section 7508A, the covid-19 disaster declaration could not postpone Mr. Kwong's filing deadline until February 2023. The government argued both that Mr. Kwong's reading of the statute would render it disjointed and that the initial declaration did not specify an end date but only declared that the disaster was "continuing," while the 2019 version of the statute requires a date "so specified." *Id.* at 7-9.

        **2.**     **Section 6532 can be and was extended by statute**

The government spent most of its briefs on issues that turn out not to matter to its case. It spent a lot of space arguing that section 6532 is jurisdictional and therefore cannot be equitably tolled. ECF No. 29 at 4-5 (citing, among other cases, *RHI Holdings, Inc. v. United States*, 142 F.3d

5

1459, 1461–63 (Fed. Cir. 1998)). But even if section 6532 is jurisdictional, that forecloses only *equitable* tolling; the deadline may still be tolled or extended by statute.[1] *See Abdo v. Commissioner of Internal Revenue*, 162 T.C. 148, 168 (2024) (reasoning that section 7508A gave taxpayers an automatic postponement of section 6532's deadlines). In fact, section 6532 itself allows for extensions: "The 2-year period prescribed in [section 6532(a)(1)] shall be extended for such period as may be agreed upon in writing between the taxpayer and the Secretary." 26 U.S.C. § 6532(a)(2).

Congress amended section 7508A in 2019 and amended it again in November 2021. The government spent its reply brief arguing that the 2021 version of section 7508A should apply (ECF No. 31 at 3-4), prompting the court's questions about retroactivity (ECF Nos. 32, 35). But, as the government ultimately conceded (ECF No. 36 at 6), the November 2021 amendment applied only to disasters declared after the enactment of the amendment. 167 Cong. Rec. S5247-01, S5496 (2021) ("The amendment made by this section shall apply to federally declared disasters declared after the date of enactment of this Act."). Thus, the November 2021 amendment could not apply

---

[1] The Federal Circuit has held that the two-year limitation in section 6532 is jurisdictional and does not allow for equitable tolling. *RHI Holdings*, 142 F.3d at 1462. More recent Supreme Court cases have held that, absent a clear statement by Congress that a time bar for filing is jurisdictional, the "courts should treat the restriction as nonjurisdictional." *United States v. Kwai Fun Wong*, 575 U.S. 402, 409 (2015) (addressing 28 U.S.C. § 2401(b)). That is true in tax cases as well. *Boechler, P.C. v. Commissioner of Internal Revenue*, 596 U.S. 199, 204 (2022) (holding that the timing requirement in 26 U.S.C. § 6330(c) was not jurisdictional and therefore was subject to equitable tolling); *see also Culp v. Commissioner of Internal Revenue*, 75 F.4th 196, 201-02 (3d Cir. 2023) (explaining, based on *Boechler*, that the time limit in 26 U.S.C. § 6213(a) was non-jurisdictional because "there is no clear tie between the deadline and the jurisdictional grant"), *rehearing denied* (Nov. 28, 2023), *cert. denied*, 144 S. Ct. 2685 (2024); *Walby v. United States*, 957 F.3d 1295, 1299 (Fed. Cir. 2020) (stating in a tax refund case that "it may be time to reexamine [Federal Circuit] case law in light of the Supreme Court's clarification that so-called 'statutory standing' defects—i.e., whether a party can sue under a given statute—do not implicate a court's subject matter jurisdiction"). This court need not decide whether equitable tolling is available under section 6532 because, although Mr. Kwong characterizes the tolling in different ways, he in fact seeks statutory, not equitable, tolling. *See* ECF No. 30 at 9-10.

to the covid-19 disaster, which was declared in early 2020. That means the parties' briefing about retroactivity (ECF No. 36 at 3-4; ECF No. 37 at 8-9) is irrelevant to the case.

Section 7508A allows the Secretary of the Treasury to postpone a taxpayer's deadline to file his taxes, usually during a period of a natural disaster. Although section 7508A changed during the period relevant to this lawsuit, at all relevant times it stated that the Secretary may "specify a period of up to 1 year that may be disregarded" during a taxpayer's two-year window to bring suit for a tax credit or refund. 26 U.S.C. § 7508A(a) (2019 and 2021); *see id.* § 7508A(a)(1). The statute also includes, at all times relevant to this lawsuit, an automatic, or "mandatory," extension for any qualified taxpayer in a declared disaster area. 26 U.S.C. § 7508A(d) (2019 and 2021). Under the 2019 version, the period of automatic extension ran from "the earliest incident date specified in the declaration" to "the date which is 60 days after the latest incident date so specified." 26 U.S.C. § 7508A(d) (2019). In November 2021, Congress amended the automatic extension of section 7508A, changing the end of the period from "the date which is 60 days after the *latest incident date* so specified," to "the date which is 60 days after the later of such *earliest incident date* … or the *date such declaration was issued*." *Compare* 26 U.S.C. § 7508A(d) (2019) *with* 26 U.S.C. § 7508A(d) (2021) (emphasis added). Thus, the automatic extension, on its face, went from an unlimited period, as long as the disaster was ongoing, to a maximum of 60 days.[2]

### 3.    Section 7508A, as applied to the covid-19 disaster, extended the deadline until July 2023

Mr. Kwong argues that his deadline was postponed under the 2019 version of section 7508A(d) until 60 days after the covid emergency declaration in California—he resides in California—was over. Mr. Kwong argues that that date is July 10, 2023, at the earliest. ECF No. 30

---

[2] In July 2025, Congress again amended the mandatory extension deadline, extending it from 60 days to 120 days. 26 U.S.C. § 7508A(d) (2025). The change in mandatory extension does not impact this case.

7

at 9; ECF No. 37 at 4. According to Mr. Kwong, because his time to file suit began in September or October 2020 (depending on the tax year) and was extended until at least July 2023, and he filed in February 2023, his suit is timely. The government responds that Mr. Kwong's reading of section 7508A is disjointed and also that, because the emergency declaration did not initially include a specific end date, the statute does not apply to extend the postponement period as long as Mr. Kwong needs. ECF No. 36 at 7.

Mr. Kwong's view is correct, under the court's reading of the 2019 version of section 7508A. The 2019 version of the statute allows the period of automatic extension to run from "the earliest incident date" of the disaster declaration to "60 days after the latest incident date." 26 U.S.C. § 7508A(d) (2019). The plain meaning of that statute is that the automatic extension runs from the beginning of the disaster declaration, through the end of the declared disaster period, and until 60 days after the end of the declared disaster period. The government does not dispute the plain meaning of the 2019 version of section 7508A. *See* ECF No. 36 at 6-9.

On March 13, 2020, the president declared nationwide emergency (Letter to Federal Agencies on an Emergency Determination, 2020 Daily Comp. Pres. Doc. 159, available at govinfo.gov (Mar. 13, 2020)), and on March 22 he declared a major disaster area in California "beginning on January 20, 2020, and continuing," due to pandemic conditions (California; Major Disaster and Related Determinations, 85 Fed. Reg. 20703-02 (Apr. 14, 2020)). The Federal Emergency Management Agency was appointed to coordinate the response. *Id.* The pandemic emergency declaration was later amended to end on May 11, 2023: "[T]he incident period for all COVID-19 major disaster declarations … will close effective May 11, 2023." Major Disaster Declarations and Related Determinations: Expiration of COVID-19-Related Measures, 88 Fed. Reg. 8884 (Feb. 10, 2023).

8

A disaster declaration that lasted more than three years was unprecedented. Congress appears to have intended for the statute to provide routine short-term deadline extensions under section 7508A(d) and, in rare instances under section 7508A(a), further extensions by the Secretary that would last up to a year. 26 U.S.C. § 7508A(d), (a) (2019). Disaster declarations often apply to short-term weather events affecting localized communities; the covid-19 pandemic was an unprecedented and long-lasting national event. Although Congress may not have anticipated a disaster declaration lasting more than three years, the statute's express text nevertheless applies. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) ("Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent." (quotation marks omitted)).

The provision under subsection (a) for the Secretary to optionally issue an extension up to a year does not undermine the plain meaning of the text of subsection (d) that allows for a potentially longer automatic extension. The government argues (ECF No. 36 at 8) that because subsection (d) states that the mandatory period "shall be disregarded in the same manner as a period specified under subsection (a)," the extension under subsection (d) can be no longer than the extension available under subsection (a). But the "manner" in which the period is disregarded, discussed in subsection (a), is more evidently not the length of time but the types of actions that can be delayed, such as a taxpayer's determining amounts of interest and amounts of credit or refund. 26 U.S.C. §7508A(a)(2), (3) (2019). Nothing in subsection (d) mentions or implies a one-year limit. Under the express text of the statute, the automatic extension lasted until after the end of the disaster declaration, or, in the case of the covid-19 disaster, until July 10, 2023 (60 days after its end date of May 11, 2023).

And nothing in subsection (a) renders the court's reading of subsection (d) nonsensical. Congress said, and easily could have meant, essentially, that for short-term emergencies, the Secretary was authorized to extend deadlines to up to one year, but for long-term emergencies, there was no further extension available.

### 4. The declaration's use of the word "continuing" has meaning

The government further argues that the extension did not continue into 2023 because the date in the initial emergency declaration is both the earliest and latest incident date "specified" for purposes of section 7508A. ECF No. 36 at 7. The government states that, because the initial pandemic emergency declaration was "beginning on January 20, 2020, and continuing," only the January date was "specified" according to the statute. *Id.*

That argument is unpersuasive. If the emergency declaration was intended to include only January 20, 2020, the declaration would not have also said, "and continuing." *See* 85 Fed. Reg. 20703-02. The government's choice to maintain the disaster declaration beyond January 20, 2020, has meaning.

The government relies on *Abdo* for support that the earliest incident and latest incident date are both January 20, 2020. ECF No. 36 at 6-7; *see Abdo*, 162 T.C. at 150, 169. But the Tax Court in *Abdo* did not address a postponement extending more than 60 days after January 20, 2020. There, a longer postponement was not at issue because the court held that the petitioners had filed a timely claim within the first 60 days of the covid-19 emergency declaration, that is, within 60 days of January 20, 2020. *See Abdo*, 162 T.C. at 156-57, 169. The *Abdo* court therefore did not need to address the disaster declaration's effect going past the first 60 days. *Id.* at 169 n.13 ("We need not, and therefore do not, express a view on what the outer limits of the extension period may be where a declaration omits an ending date or is extended."); *see also id.* at 157 n.8.

10

The 2021 amendment to section 7508A(d) altered the mandatory extension, such that it would end 60 days after the earliest incident date or the date the declaration was issued, whichever date is later. *See* 26 U.S.C. § 7508A(d)(1)(B) (2021). The change in statutory text ensures that a mandatory 60-day extension is tacked on after a single date rather than after the last day of a multi-day (or multi-year) disaster declaration. Congress thus changed the statute to no longer have an indefinite automatic extension when a disaster lasts a long time. That Congress had to amend the statute implies that Congress changed the statute's meaning; otherwise, Congress could have left the statute's text as it was. *Bufkin v. Collins*, 604 U.S. 369, 386 (2025) ("[W]e ordinarily presume that when Congress [amends a statute], it intends its amendment to have real and substantial effect." (quotation marks omitted)).

### 5. The IRS's interpretation does not control the analysis

The government argues that, in a regulation, the IRS interpreted the 2019 version of section 7508A not to extend the automatic extension indefinitely. ECF No. 36 at 8. It is true that the IRS, in a regulation effective June 11, 2021, stated, "In no event will the mandatory 60-day postponement period [under subsection (d)] be calculated to exceed one year." 26 C.F.R. § 301.7508A-1(g)(3)(ii). And the Secretary of the Treasury regularly issues disaster relief orders under section 7508A that extend deadlines for taxpayers. During the covid-19 pandemic, the Secretary issued notices postponing deadlines for tax filers from April 15 to July 15, 2020 (IRS Notice 2020-17 at 980 (Apr. 20, 2020)), and from April 15 to May 17, 2021 (IRS Notice 2021-21 at 986 (Apr. 12, 2021)). Each notice explained that the deadline was extended for taxpayers to file their federal tax returns only for the preceding year, 2019 and 2020 respectively. According to the government, if Mr. Kwong's interpretation is correct, none of those postponements would have been necessary.

But the IRS's reading of the statute is not dispositive. This court must "exercise [its] independent judgment in deciding whether an agency has acted within its statutory authority … courts

11

… may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024); *see also 3M Co. v. Commissioner of Internal Revenue*, No. 23-3772, slip op. at 4 (8th Cir. Oct. 1, 2025). The regulations promulgated by the IRS appear to misread the statute by limiting the mandatory extension time described in section 7508A(d) by the general one-year provision mentioned in section 7508A(a). *See* 26 C.F.R. § 301.7508A-1(g)(3)(ii). As discussed above, the court reads the two provisions as independent. The statute is not ambiguous, at least for purposes of the timing question in this case.

The government fears that this court's reading of section 7508A, according to its plain meaning, will cause "uncertainty [in] tax administration" for all taxpayers from January 2020 to July 2023. ECF No. 36 at 9. This decision is being issued in 2025, more than two years after Mr. Kwong filed his suit in 2023. The years that have passed since the end of the covid-19 disaster declaration make it unlikely that many taxpayers would still be able to bring a timely claim based on the 2019 statute. Further, the extension may have given a taxpayer like Mr. Kwong additional time to file his claim, but the extension was not "indefinite[]" (ECF No. 36 at 9).

The government also fears that this court's reading of the statute gives the head of the Federal Emergency Management Administration the power to suspend the timelines of tax administration without input from the Secretary of the Treasury or the Commissioner. ECF No. 36 at 9. But that is true whether the automatic postponement period is only 60 days or is longer. And the executive branch is supposed to work together; concerns that one agency will make policy for another should be worked out within the executive branch.

\*         \*         \*

In sum, under the 2019 statute, the automatic, or mandatory, extension period began on January 20, 2020, and ended on July 10, 2023, 60 days after the emergency declaration's latest

incident date. Because the mandatory period for covid-19 under section 7508A lasted from early 2020 to July 10, 2023, it does not matter whether the statute provides for tolling or a postponement period (*see* ECF No. 36 at 1-2). Either way, Mr. Kwong had until at least July 10, 2023, to file suit. He filed suit before that, and his suit for tax years 2007, 2010, and 2011 was therefore timely.[3]

> **B.   Mr. Kwong's challenge to the transfer of his 2016 overpayment to 2007 is untimely**

In 2017, when Mr. Kwong filed his tax return for tax year 2016, he had a balance of $316,590.02 in overpayments. The IRS applied it to satisfy his outstanding debts from the 2007 tax year, even though Mr. Kwong requested that the IRS apply it forward to the 2017 tax year. *Supra* Part I. As already discussed, Mr. Kwong timely challenged the 2007 penalties themselves. But the parties also address whether Mr. Kwong has timely challenged the 2017 transfer.

Mr. Kwong can no longer challenge the IRS's applying the balance of Mr. Kwong's overpayment to satisfy his outstanding federal tax liabilities, separately from his challenge to tax year 2007 itself. Under 26 U.S.C. § 6402(a), the IRS may first satisfy any outstanding IRS liabilities before applying an overpayment as a credit for future taxes. "In the case of any overpayment, the Secretary … may credit the amount of such overpayment … against any liability in respect of an internal revenue tax on the part of the person who made the overpayment." 26 U.S.C. § 6402(a). "The credit of an overpayment of any tax in satisfaction of any tax liability shall, for the purpose

---

[3] At oral argument, Mr. Kwong's attorney indicated that he was likely abandoning his claims for tax years 2010 and 2011. ECF No. 34 at 54:17-21 ("[W]e're not concerned so much about [tax years 2010 and 2011]. What we're really concerned about is 2007 and the payment from 2016 to 2007."). So the challenge at issue essentially covers only tax year 2007. Also at oral argument, Mr. Kwong's attorney stated that he was disputing only the penalties, not the underlying tax liability. *Id.* at 56:2-7 ("It's only the penalties [that we are disputing]. We're not disputing the underlying tax liability."). Notably, because Mr. Kwong has challenged only the penalties for tax year 2007, the government argues that his total claim for 2007 is at most $84,000. ECF No. 36 at 11. The court will not address that issue here, as Mr. Kwong has not yet had a chance to respond to the government's calculation of the total penalty.

13

of any suit for refund of such tax liability so satisfied, be deemed to be a payment in respect of such tax liability at the time such credit is allowed." 26 U.S.C. § 7422(d). Thus, "[u]nder section 7422(d), when the IRS applies an overpayment as a credit to a liability for a separate tax year, the taxpayer must file a refund claim for the year in which the IRS applied the credit." *Greene-Thapedi v. United States*, 549 F.3d 530, 532 (7th Cir. 2008). Here, because the IRS applied Mr. Kwong's 2017 payment (initially made for tax year 2016) to tax year 2007, his refund claim is for tax year 2007, not tax year 2016.

Once the payment is applied to an earlier tax year, the date of the IRS's transfer serves as the date that the money was paid. *See Schaeffler v. United States*, 889 F.3d 238, 249 (5th Cir. 2018); *Donahue v. United States*, 33 Fed. Cl. 600, 605 (1995). In this case, the IRS made the transfer in April 2017 (ECF No. 29-1 at 61) or, at the latest, November 2017 (*see* ECF No. 36 at 10 n.6). Thus, Mr. Kwong's clock to request a refund of that approximately $317,000 began in April 2017 or November 2017 at the latest.

Under 26 U.S.C. § 6511(a), a taxpayer must request a refund, at the latest, "2 years from the time the tax was paid." Section 6511 has an exception that tolls the deadline to file a return if the taxpayer "is unable to manage his financial affairs by reason of a medically determinable physical or mental impairment of the individual which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," or if the taxpayer has a legal guardian. 26 U.S.C. § 6511(h)(2)(A).

If Mr. Kwong wanted to seek a refund of the IRS's transfer of his overpayment for tax year 2016 to tax year 2007, he needed to file a request for a refund of a payment to his 2007 taxes, and he needed to do that by April or November 2019, or he needed to argue that the exception applies. He did neither. He filed requests for abatements for 2007 and 2016 in 2020, more than two years

14

after the payment was transferred to his 2007 taxes. Mr. Kwong has not argued that the exception applies during that period, making him ineligible for a tolling of the two years he had to file his return. Thus, even though Mr. Kwong's request for abatement of his 2007 tax return was timely, he cannot separately recover the 2016 overpayment because he requested abatement of the 2016 overpayment more than two years after he sent the overpayment. The government is entitled to summary judgment on the transfer of Mr. Kwong's overpayment from tax year 2016 to 2007. Mr. Kwong can and has challenged the penalties for 2007 within the 2007 tax year, but he cannot also, separately, challenge those penalties under the 2016 tax year.

      **C.**      **There is no genuine issue of material fact that Mr. Kwong owed an underpayment penalty for tax year 2016**

The IRS assessed penalties against Mr. Kwong under 26 U.S.C. § 6654 for tax year 2016 for underpaying his taxes over the course of that year. *See* 26 U.S.C. § 6654(a) ("Except as otherwise provided in this section, in the case of any underpayment of estimated tax by an individual, there shall be added to the tax … an amount" that includes the amount of underpayment plus an additional penalty.). For tax year 2016, in addition to arguing that the IRS should not have applied his overpayment to his outstanding IRS obligations, addressed above, Mr. Kwong argues that he acted reasonably in relying on the 2005 advice of his tax preparers and would not have incurred a delinquency penalty absent their bad advice. ECF No. 30 at 10-12. To the extent that Mr. Kwong is arguing about the penalties applied to the 2007, 2010, and 2011 tax years, he is not too late to raise that, as discussed in Part II.A above. To the extent that Mr. Kwong is arguing about penalties incurred in tax year 2016, the IRS appropriately applied a penalty of approximately $1,930 for underpaying his taxes over the course of the year, and that penalty is not subject to a reasonable cause exception.

15

As an initial matter, Mr. Kwong is ambiguous about the type of penalty the IRS assessed on his 2016 tax return. He argues that it was a "delinquency penalty," presumably under section 6651 for failure to file a tax return. ECF No. 30 at 10, 12; *see* ECF No. 29-1 at 119 (requesting a refund for penalties under sections "6551, 6654"). But the IRS knew he had filed a return and assessed an underpayment penalty under section 6654 for that year, for underpaying estimated taxes throughout the year. ECF No. 29-1 at 89 (noting an "estimated tax penalty" of $1,929.98); ECF No. 1-1 at 16 (explaining that the $1,929.98 charge was a "[p]enalty for not pre-paying tax").

Mr. Kwong does not present any viable excuse for his 2016 penalty under section 6654. Notably, under section 6651, penalties may be waived if the taxpayer shows that his failure to file or pay "is due to reasonable cause and not due to willful neglect." 26 U.S.C § 6651(a). A taxpayer may demonstrate reasonable cause if he relies on the advice of an accountant on questions of tax law, including the existence of a tax liability. *United States v. Boyle*, 469 U.S. 241, 251 (1985). Unlike section 6651, underpayment penalties under section 6654 cannot be excused for reasonable cause. Instead, section 6654 states that a penalty may be waived if the taxpayer owes less than $1,000 for the year (subsection (e)(1)), the taxpayer had no tax liability in the preceding tax year (subsection (e)(2)), an unusual circumstance such as a disaster occurred that would make imposing the penalty against "equity and good conscience" (subsection (e)(3)(A)), or the taxpayer retired or became disabled in the tax year (subsection (e)(3)(B)). Mr. Kwong makes no argument that any of those excuses apply.

For 2016, Mr. Kwong withheld $6,684 over the course of the year and had tax liabilities of $88,164. ECF No. 29-1 at 89. Under section 6654, an underpayment occurs when a taxpayer pays less than 90 percent of the tax he owes over the course of the tax year. 26 U.S.C. § 6654(d)(B)(i). Mr. Kwong paid less than 10 percent of his taxes over the course of 2016, and he does not dispute

that he underpaid his 2016 taxes over the course of the year. Thus, there is no genuine issue of material fact that the IRS appropriately assessed a penalty of $1,930 for underpayment of Mr. Kwong's 2016 taxes.

### D. Mr. Kwong abandoned his claim for a refund for tax year 2015

In his complaint, Mr. Kwong requests a "refund of the delinquency penalties overpaid by [Mr. Kwong] for the 2015 tax year in the amount of $10,727." ECF No. 1 at 15-16 [¶¶G-H]. In his response to the government's motion for summary judgment, Mr. Kwong does not address the government's arguments on tax year 2015. *See* ECF No. 30. At oral argument, Mr. Kwong's attorney stated that he is abandoning his request for tax year 2015. ECF No. 34 at 54:22-25. Because Mr. Kwong has abandoned the claim involving tax year 2015, the government is entitled to summary judgment for tax year 2015.

## III. Conclusion

For the reasons stated above, this court **grants in part and denies in part** the government's motion for summary judgment. Mr. Kwong has timely challenged the penalties assessed for tax years 2007, 2010, and 2011. The parties shall file a joint status report by December 29, 2025, noting that the parties have engaged in a settlement discussion within the last week in person, by videoconference, or by phone and proposing next steps, including proposed dates for a trial, pretrial conference, and deadlines for pretrial filings.

**IT IS SO ORDERED.**

/s/ Molly R. Silfen
MOLLY R. SILFEN
Judge